WILKERSON & SATTERFIELD v. Mc-MURRY et al. (No. 7148.)

(Court of Civil Appeals of Texas. Dallas. May 23, 1914.)

1. MECHANICS'. LIENS (§ 277*) — ACTIONS — PLEADINGS—VARIANCE.

In an action to foreclose a mechanic's lien, the defense·that the property improved was a homestead, and that the wife of the owner did not execute any written contract for the work as required by statute to fix a lien thereon, was available under the general denial.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 546–554; Dec. Dig. § 277.*]

2. PLEADING (§ 378*) — PETITION — GENERAL DENIAL—ISSUES.

A general denial puts in issue every material fact alleged in the petition.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1232–1236; Dec. Dig. § 378.*]

3. MECHANICS' LIENS (§ 61*)—CONTRACTS.

Only the owner or his agent, trustee, or contractor may make contracts fixing liens on lands and buildings.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 77, 78; Dec. Dig. § 61.*]

4. FRAUDS, STATUTE OF (§ 129*) — PAROL GIFTS OF LAND.

Equity will sustain a parol gift of land, notwithstanding the statute of frauds, where possession has been delivered and improvements of a substantial value have been made on the land by the donee with the donor's knowledge.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 287–292, 303, 306–308, 310–312, 314, 318–320, 322, 323, 325, 326; Dec. Dig. § 129.*]

5. FRAUDS, STATUTE OF (§ 129*) — PAROL GIFTS OF LAND—IMPROVEMENTS.

Where an owner gave land to a son, who was placed in possession, and who, preparatory to the building of a house thereon, removed trees and fences and filled in low places, the improvements made by the son on the faith of the gift vested in the son the title in equity, notwithstanding the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 287–292, 303, 306–308, 310–312, 314, 318–320, 322, 323, 325, 326; Dec. Dig. § 129.*]

6. HOMESTEAD (§ 31*)—PROPERTY CONSTITUTING—LIENS.

Where a donee of real estate accepted the gift with the understanding that the property should be his homestead, and he began to improve the property and erect a house thereon with the intent to occupy the same as a home, and the improvements were completed and occupied, the property was impressed with homestead character, within the rule that a lien cannot be created against a homestead unless there is a contract in writing, signed and acknowledged as required by the statute.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. § 39; Dec. Dig. § 31.*]

7. MECHANICS' LIENS (§ 59*)—CONTRACTS—VALIDITY.

One merely in possession under a contract to purchase or under an unexecuted parol gift is not the owner of the land and cannot create a mechanic's lien on it.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 75, 76; Dec. Dig. § 59.*]

8. MECHANICS' LIENS (§ 115*) — NOTICE TO OWNER—NECESSITY.

Under the statute, an owner contracting for the erection of a building on his land is not liable to a subcontractor or materialman for any amount paid to the contractor before receiving notice of the subcontractor's or materialman's claim, as provided by statute, but, from the time of the service of notice, the owner may make no further payment to the contractor without incurring liability for a lien debt, provided proper steps are taken to establish a lien, to the extent of his indebtedness to the contractor at the time of the notice.

[Ed. Note.—For other cases, see· Mechanics' Liens, Cent. Dig. §§ 150–159; Dec. Dig. § 115.*]

9. MECHANICS' LIENS (§ 315*)—BONDS FOR DISCHARGE—LIABILITY OF SURETY.

A surety in a building contractor's bond, conditioned on the contractor discharging the property from liens and incumbrances and paying claims which may become liens, is not liable to a materialman taking no steps to secure a lien.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 658; Dec. Dig. § 315.*]

Appeal from District Court, Hill County; Horton B. Porter, Judge.

Action by Wilkerson & Satterfield against F. A. McMurry and others. From a judgment for defendants, plaintiff appeals. Affirmed.

Morrow & Morrow, of Hillsboro, for appellant. H. G. Hart, of Hillsboro, for appellees.

TALBOT, J. This suit was brought by Wilkerson & Satterfield, a firm composed of O. L. Wilkerson and Will I. Satterfield, against F. A. McMurry, Louis Habersettle, Tom Conover, and Marion Conover, to recover a personal judgment against the said McMurry and Habersettle for the sum of $421.85, and to foreclose an alleged mechanic's or materialman's lien upon the tract or parcel of land described in plaintiff's petition. It appears that Marion Conover was the son of Tom Conover, and a married man. The record title to the land mentioned was in Tom Conover, but he had made a parol gift of a part of. it to his said son and had agreed to make him a deed to it. Upon the faith of the gift and promise of a deed from his father, Marion Conover verbally contracted with J. H. Webb to furnish all material and labor and to build for him upon said lot or parcel of land a house to be occupied by himself and wife as their home, agreeing to pay the said Webb therefor the sum of $1,475. Webb, in accordance with his contract with the defendant Marion Conover, began the erection of said house about the 1st day of February, 1913, and completed it, with exception of the plumbing work. On the 3d day of February, 1913, the said Webb

entered into a bond with the defendants F. A. McMurry and Louis Habersettle as sureties, in the sum of $1,000, payable to the said Marion Conover, and conditioned and reading, so far as is necessary to state, as follows:

"The condition of this obligation is such that, whereas, the said J. H. Webb, contractor, has entered into a contract with said party (Marion Conover), whereby said J. H. Webb, contractor, has agreed to erect certain buildings described in said contract, upon the following described real estate, situate in the county of Hill, state of Texas, and described as follows: 41½x75 feet of the northeast part of the T. M. Conover lot on east Franklin street, Hillsboro, Texas. Now, therefore, if the said J. H. Webb, contractor, or said sureties, shall erect and complete, or cause to be erected and completed within two months from the date of this bond, the buildings mentioned and described in said contract at a cost of not less than fourteen hundred seventy-five dollars, and promptly, as the same may from time to time become due, well and truly pay, or cause to be paid, all bills, claims and demands of said laborers, contractors, materialmen and others for work, labor and material as aforesaid, which are now or may become liens on said real estate, for the improvements thereon, and shall fully and faithfully perform said contract in exact accordance with its terms, and in case said buildings should be left in an incomplete condition by the above-named principal, said sureties, at the expiration of said two months, shall reimburse the said Marion Conover, second party hereto, all moneys they may expend for completing said buildings according to the plans adopted by said principal, then and in that case this obligation to be void, otherwise to be and remain in full force and effect."

This bond also recited that:

"It is expressly understood that said party of the second part (Marion Conover) shall not be required to wait until such claims and liens are reduced to judgment or their validity determined by an action in the court, but, upon the default of the said first party as aforesaid, then said second party can discharge said premises from such liens and incumbrances," etc.

On February 6, 1913, and at divers times thereafter up to and including March 21, 1913, the plaintiff, Wilkerson & Satterfield, sold and delivered to the said J. H. Webb lumber and other material, to be used in the erection of the house in question, and which were used in the erection of said house, of the value of $840.65. Of this amount Webb paid $418.80, leaving a balance due and unpaid of $421.85, which appellants seek to recover in this action. The building was completed by J. H. Webb, with the exception of the plumbing, and the defendant Marion Conover moved into it and occupied and used it as their homestead. Such occupancy and use by them was intended before and at the time of the making of the contract with J. H. Webb to build the house and at the time appellants furnished the lumber and material to be used in its construction. The exact date when Marion Conover moved into the house does not appear, but he says it was before the house was completed. About the time Mr. Webb completed the house, as stated, he died insolvent, and Marion Conover completed the building by having the plumbing work done himself. On June 10, 1913, appellants caused to be filed and recorded in the county clerk's office of Hill county an itemized account properly verified, showing all the material furnished the contractor Webb and used in the building of the house, substantially as required by our statute relating to the fixing of mechanic's and materialman's liens. The defendant Marion Conover was verbally notified by appellants that the contractor, Webb, was getting lumber from them to be used in the erection of the building, before the lumber was delivered, or about the time it was being delivered, but no written notice showing the lumber and material furnished and the amount due therefor was ever given Conover. At the time the appellants verbally notified Marion Conover that the contractor wanted lumber and material to be used in building the house, they asked Conover "if he would stand for it," and Conover replied that he would not. During the time the building was being erected, Marion Conover made payments to the contractor, Webb, and before his death paid him the full contract price for the erection of the building.

The defendants McMurry and Habersettle answered by a general demurrer and general denial. The defendants Tom Conover and Marion Conover answered by a general demurrer, a general denial, and payment in full by Marion Conover of the price agreed to be paid for the house. They prayed for judgment over against the sureties on Webb's bond in the event of a recovery by plaintiffs against either of them.

The case was tried by the court without a jury, and judgment having been rendered in favor of defendants, and a foreclosure of the lien claimed having been refused, the plaintiffs appealed.

[1, 2] The first assignment of error is as follows:

"The court erred in permitting the defendants to prove that the lot upon which the building was constructed was claimed and occupied by Marion Conover, as his homestead at the time of the trial, and that, at the time the contract was made, it was intended for his homestead, because it appeared from the pleading in the case that none of the defendants set up the fact that the property was homestead or was exempt from a mechanic's lien by reason of its occupancy or designation as such; said testimony having been objected to by the plaintiffs upon the ground that there was no allegation to support it, as more fully appeared in bill of exceptions No. 1."

This assignment is not well taken. The plaintiffs did not seek a personal judgment against either Tom Conover or Marion Conover. As against these defendants, plaintiffs only sought a foreclosure of their alleged materialman's lien on the house and lot involved in the controversy, and the defense that said property constituted the homestead of Marion Conover and his wife at and before the time the material was furnished by plaintiffs, and that no written contract had been made and executed by the wife, as re-

quired by statute, in order to fix a lien upon that character of property, was available under the general denial. It was distinctly so held by this court in Security Mortgage & Trust Co. v. Caruthers, 11 Tex. Civ. App. 430, 32 S. W. 837. This is so because of the familiar rule under our practice that a general denial puts in issue every material fact alleged in plaintiffs' petition. The failure, therefore, of the defendants to plead specifically, as a matter of defense, to plaintiffs' alleged cause of action that the property upon which plaintiffs sought to foreclose the lien claimed by them was a homestead did not preclude them from showing such fact in answer to plaintiffs' claim of lien.

[3] But appellants contend that the evidence was insufficient to show that the property in question was the homestead of either Tom Conover or Marion Conover at and before the time plaintiffs furnished the material with which to build the house, because they say it appears from the evidence that part of the lot upon which said house was built had been a part of the homestead of Tom Conover, but that he had abandoned it, and set it aside with the intention of giving it to his son, Marion Conover, but the latter had never acquired any title to it. The evidence shows the lot upon which the house in question was built had for several years prior to the parol gift of it by Tom Conover to his son, Marion Conover, constituted a part of the former's homestead, and if, at the time the lumber and material were furnished by plaintiffs, an equitable title thereto had not passed to and vested in Marion Conover by virtue of said gift and improvements made upon the lot by him, then it would seem to follow that said lot remained the property of Tom Conover and a part of his homestead. As shown in our statement of the facts, the paper or record title was up to the time of the trial of this case in Tom Conover, and there is nothing in the record before us that would warrant the conclusion that he had parted with that title and that homestead character of the property had ceased to exist except by the gift of it to his son. The evidence seems to be uncontroverted that Marion Conover, in contracting for the erection of the house and procuring the execution of the bond upon which the defendants McMurry and Habersettle appear as sureties, was acting alone for himself and in his own behalf, and, if the lot remained the property of Tom Conover, appellants, by furnishing lumber and material to J. H. Webb for the erection of a house upon it for Marion Conover, could not fix or acquire a lien upon either the house or lot under our Constitution or statutes relating to mechanic's or materialman's liens. It is well settled that, under the laws of this state, "no person other than the owner or proprietor, his agent, trustee, contractor, or contractors, can make contracts fixing liens on lands, houses, buildings, fixtures, or improvements,

such as are asserted in this case." Galveston Exhibition Association v. Perkins, 80 Tex. 62, 15 S. W. 633.

The first question, then, is: Had the defendant Marion Conover, at or before the time plaintiffs sold and delivered the lumber and material described in the account sued on to J. H. Webb, become the equitable owner through gift of his father of the lot or parcel of land in question?

[4] It cannot be denied that equity will sustain a parol gift of land, notwithstanding the statute of frauds, when possession has been delivered and improvements of a substantial value have been made upon the land by the donee with the knowledge of the donor. Hutcheson v. Chandler, 47 Tex. Civ. App. 124, 104 S. W. 434; Hammond v. Hammond, 49 Tex. Civ. App. 482, 108 S. W. 1024.

[5] The uncontroverted evidence shows that the defendant Tom Conover gave the land to his son, Marion Conover, and placed him in control of it a short time before the latter contracted with J. H. Webb to build the house. It also shows without contradiction that, before Webb contracted to and began to build the house, the defendant had done necessary work upon the lot preparatory to building the house. He removed trees and fences from the lot and filled in low places to make it level. This work being done, the contract was made with Mr. Webb to erect the house, and the work of erecting it began about the 3d day of February, as we interpret the evidence, and, as before shown, no material was furnished by the plaintiffs, Wilkerson & Satterfield, earlier than the 6th day of February thereafter, and up to the 14th day of February, 1913, only $5 worth of material had been furnished. It is true that slight improvements, not permanent and valuable, are insufficient to support an action for the specific performance of a parol contract to convey land, but the facts detailed, taken in connection with the improvements which may reasonably be inferred from the evidence to have been made by Marion Conover upon the land in the progress of building the house contracted for, before any lumber and materials had been furnished by appellants, or before any of any consequence had been furnished, show, we are inclined to think, such possession and improvements upon the faith of the parol gift as vested in Marion Conover title to said land.

[6] If this conclusion is correct, then the next question is: Do the facts show that the property, upon which appellants seek to foreclose the lien claimed by them, was the homestead of Marion Conover and wife at the time appellants furnished the material specified in their account to the contractor Webb? We are of the opinion this question should also be answered in the affirmative. Marion Conover had no other homestead, and the land in question was given to him and accepted by him for the purpose and

with the intention of building a house upon it and making it the home of himself and wife. Before the contract to build the house was made and the lumber and material furnished by appellants, he began active preparations to improve the lot, to erect a house upon it, with the avowed intention to complete the improvements and to occupy them as a home. The improvements were completed and promptly occupied as contemplated, and the several overt acts mentioned, coupled with the avowed and unequivocal intention of Conover to make the property his homestead from the time he acquired the land by gift from his father, impressed the homestead character upon it at the time appellants furnished the building materials to J. H. Webb; and there being no contract in writing signed and acknowledged as required by our statute, where the property to be improved is a homestead, no lien was created in favor of appellants. Franklin v. Coffee, 18 Tex. 416, 70 Am. Dec. 292; Cameron v. Gebhard, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832, and cases cited; Kempner v. Comer, 73 Tex. 196, 11 S. W. 194; Bell et al. v. Greathouse, 20 Tex. Civ. App. 478, 49 S. W. 258.

[7] If, however, we are mistaken in our conclusion that Marion Conover had acquired title to the land in question, or that it was the homestead of himself and wife at the time appellants sold and delivered the material mentioned in their account to J. H. Webb, then the land and the improvements made upon it was the property of Tom Conover, and said lumber and material furnished by appellants not having been furnished at his instance nor at the instance of some one authorized so to do for him, and for the further reason that the land was a part of his homestead, no lien was fixed on it by the use of said material in building the house. The law is that, as against the owner of the record title, one merely in possession under a contract to purchase, and likewise under an unexecuted parol gift of land, is not the owner of the land, and for this reason cannot fix or create a lien upon it. Galveston Exhibition Association v. Perkins, supra, and cases therein cited.

[8] But again, if the land and premises had become the property of Marion Conover, and did not constitute his homestead at the time the material was furnished the contractor, Webb, by appellants to be used in the construction of the house, yet no enforceable lien against the property was created or personal liability incurred by Marion Conover for the payment of appellants' claim, because notice of such claim was not given to the said Marion Conover, as required by article 5623 of the statute. The lumber and material furnished by appellants, and upon which their claim is based, were sold and delivered by them to the original contractor Webb, and not to Conover, the owner of the land, and Conover, without written notice being served upon him showing the items of appellants' account and the amount due therefor, paid in full the contract price stipulated to be paid for the erection of the house. This being true, appellants could neither enforce a lien against the property nor recover a personal judgment against Conover for the amount of his account. Under the statute mentioned, the owner of land, who contracts for the construction of a building thereon, is not liable to a subcontractor or materialman for any amount paid to the contractor before such owner is served with notice of the subcontractor's or materialman's claim, as provided by said statutes (Dudley v. Jones, 77 Tex. 69, 14 S. W. 335), but, from the time of the service of the notice upon the owner of the property, he can make no further payment to the contractor without incurring liability for the lien debt, if proper steps shall be taken to establish it, to the extent of his indebtedness under the contract when notice is served (Lonergan v. San Antonio Trust Co., 101 Tex. 63, 104 S. W. 1061, 106 S. W. 876, 130 Am. St. Rep. 803). It is further said in the case last cited that, "if the owner of the property is indebted to the contractor, the service of the notice, if followed by the acts required to fix the lien, secures the fund as does a writ of garnishment in an ordinary case;" that "the owner of the property is liable to the materialman only as he (the owner) would be liable to the contractor." To suffer appellants to enforce the lien as claimed and urged by them would in effect compel Marion Conover to pay a greater sum on account of the labor performed and material furnished in the erection of his house than the sum stipulated in the contract between him and the original contractor, Webb. This he cannot be required to do under the facts shown.

[9] In reference to the question of the liability of the sureties on the bond given by the contractor, Webb, to Marion Conover, it is sufficient to say that if, in any event, appellants could have maintained a suit on said bond for material furnished Webb to be used in the erection of Marion Conover's house, which is not admitted, still as said sureties, by the terms of said bond, only undertook and bound themselves to discharge the property from all liens and incumbrances and to pay such bills and claims of laborers and materialmen which became liens upon said property, and since no lien was created and fixed upon said property by reason of the use of the material furnished by appellants, and the steps taken by them to secure a lien, no liability by reason of the execution of said bond was incurred. Republic Guaranty & Surety Co. v. Wm. Cameron & Co., 143 S. W. 317.

The evidence supports the judgment of the district court, and it is affirmed.